# IN THE DISTRICT COURT OF THE UNITED STATES

## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| CARLA Y. FINCANNON MASTERS, | ) | Civil Action No. 3:10-2477-RBH-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, <u>et seq.</u>, DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## <u>ADMINISTRATIVE PROCEEDINGS</u>

Plaintiff applied for DIB on January 9, 2008, alleging disability as of January 3, 2008. Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 14, 2009, at which Plaintiff and a vocational expert ("VE") appeared and testified. On October 29, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of the VE, concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was forty-one years old at the time of the ALJ's decision. She has a high school education, with one year of college and past relevant work as a dental hygienist. Plaintiff alleges disability due to migraine headaches, fibromyalgia, lumbar back disorder, anxiety, and depression.

The ALJ found (Tr. 48-54):

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.      The claimant has not engaged in substantial gainful activity since January 3, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.      The claimant has the following severe impairments: migraine headaches, fibromyalgia, lumbar back disorder, anxiety, and depression (20 CFR 404.1520 (c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that claimant must avoid concentrated exposure to occupational hazards. Additionally, as a result of claimant's "severe" mental impairments, I find that she is restricted to simple, routine, and repetitive tasks, and is likewise restricted to work that does not involve interaction with members of the general public.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on November 21, 1967, and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2008 through the date of this decision (20 CFR 404.1520(g)).

On July 30, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on September 23, 2010.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

## MEDICAL RECORD

Plaintiff was treated at the Oaktree Medical Centre for various impairments, including back pain, arm and leg pain, joint pain, possible fibromyalgia, fatigue, depression, anxiety, problems sleeping, and headaches. See Tr. 175-204, 307-344, 348-355 (prior to alleged onset date) and Tr. 243-248, 251-253, 286-297, 299-302 (subsequent to alleged onset date). She was prescribed Lyrica, Ultram, Diazepam, and Valium (among other medication) for her symptoms. On March 14, 2008, it was reported that Diazepam was working well for Plaintiff and that Lyrica was helping a lot with her fibromyalgia symptoms, but she was still experiencing fatigue and pain and was often waking up as early as 4 a.m. Tr. 251-253. On March 14, 2008, it was reported that an increase in Lyrica helped

with Plaintiff's pain, but she was still waking up between 3:30-4:00 a.m. each morning. Tr. 243-245. On June 17, 2008, it was noted that she was doing well and that a change in medication dosing had helped dramatically. Tr. 289-290.

On January 7, 2008, Plaintiff was treated by Dr. Thaer Joudeh (an internist) at Southside Medical Center for complaints of severe body aches and pain, which increased with activity and slightly decreased with rest and medication. She also complained of depression, crying, and decreased focus. Dr. Joudeh's examination revealed severe generalized tenderness, spasms, and decreased range of motion, but normal extremities, motor function, sensation, gait, and station. He diagnosed Plaintiff with severe fibromyalgia, depression, and "severe functional decline" due to fibromyalgia. Dr. Joudeh recommended that Plaintiff continue treatment at Oaktree Medical Centre, seek mental health treatment, continue her medications, take part in physical therapy, and exercise. He opined that Plaintiff's symptoms were so severe that he did not think she would "be able to hold any physical job or work." Tr. 205-206.

In March 2008, a physician[1] at the Southside Medical Center completed a disability form regarding Plaintiff's mental condition. It was noted that Plaintiff's last visit was in January 2008. The doctor opined that Plaintiff had severe depression and it significantly limited her ability to work. It was noted that Valium had been prescribed for Plaintiff's mental condition and psychiatric care had been recommended. Tr. 210.

During an examination in May 2008, Dr. Joudeh recorded similar findings from the January 2008 examination. He again opined that Plaintiff was unable to "hold any physical job or work" due

---

[1]Plaintiff asserts that this form was completed by Dr. Joudeh. Plaintiff's Brief at 8. The Commissioner asserts that the signature is illegible. Defendant's Brief at 3.

4

to her fibromyalgia and mental conditions, which included anxiety, depression, and possible attention deficit disorder. Tr. 356-358.

In April 2008, Dr. Dale Van Slooten, a State agency physician, reviewed Plaintiff's medical records. He opined that Plaintiff could occasionally lift fifty pounds; could frequently lift twenty-five pounds; could sit, stand, and/or walk for six hours each in an eight-hour workday; had the unlimited ability to push and pull; could never climb ladders, ropes, or scaffolds, but had no other postural limitations; had no visual or communicative limitations; and should avoid hazardous machinery, but had no other environmental limitations. Dr. Van Slooten concluded that Plaintiff could perform medium work. Tr. 211-217.

Dr. Spurgeon Cole, a psychologist, performed a consultative examination at the request of the State agency to determine Plaintiff's mental limitations. He noted that Plaintiff had not been treated by a mental health professional in any capacity. Plaintiff reported that she drove, shopped, cooked, cleaned, did laundry, and enjoyed reading, sewing, and watching television. She got along with others, and had no difficulty structuring and executing her daily activities. Dr. Cole wrote that Plaintiff enjoyed life. Dr. Cole diagnosed Plaintiff with depression (not otherwise specified) and mild generalized anxiety. He opined that Plaintiff's fibromyalgia affected her stamina and attention, such that she would need employment that was less stressful. Dr. Cole also opined that Plaintiff had good cognitive ability and memory, had no difficulty learning simple or complex tasks, and had good concentration if she was not fatigued. Tr. 219-221.

In May 2008, Dr. Robbie Ronin, a State agency psychologist, reviewed Plaintiff's medical records and opined that she had mild limitations in her activities of daily living and moderate limitations in maintaining social functioning and concentration, persistence, or pace. Dr. Ronin

opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and to interact with the general public, but had no other mental limitations. Dr. Ronin concluded that Plaintiff was capable of simple, routine, repetitive tasks, and was capable of appropriate interaction with coworkers and supervisors. Tr. 225-242.

In June 2008, Dr. C. David Tollison, a psychologist, performed a mental status examination at the request of Plaintiff's attorney. Dr. Tollison diagnosed Plaintiff with dysthymic disorder and somatoform disorder. He opined that Plaintiff would have difficulty maintaining regular work attendance, punctuality, concentration, and persistence; that work pressures, stress, and demand situations would result in a deterioration of her physical and psychological functioning; and her condition was chronic and was expected to continue for twelve or more months. Tr. 260-274.

In September 2008, Dr. William Hopkins, a State agency physician, reviewed Plaintiff's medical records and opined that she was capable of lifting twenty pounds occasionally, she could lift ten pounds frequently, and she did not have any postural limitations. He noted that Plaintiff's medical records indicated that her symptoms improved with medication changes. Tr. 278-285.

Plaintiff's treating physician at Oaktree Medical Centre, Dr. Marcia Oliver, completed a check-the-box questionnaire regarding Plaintiff's mental and physical limitations in July 2009. Dr. Oliver opined that Plaintiff could frequently lift less than ten pounds; occasionally lift ten pounds; rarely lift twenty pounds, and never lift fifty pounds; sit for thirty minutes at a time for a total of four hours in an eight-hour work day; stand fifteen minutes at a time for a total of two hours in an eight-hour work day; walk four city blocks at a time for a total of two hours in an eight-hour work day; occasionally twist and stoop; rarely crouch or climb ladders and stairs; needed to shift positions at will from sitting, standing or walking; and needed unscheduled breaks several times during an eight-

hour work day for five to ten minutes at a time. Dr. Oliver wrote that she agreed with Dr. Tollison's mental assessment and opined that Plaintiff's depression and anxiety would affect her physical condition. Dr. Oliver also opined that Plaintiff would experience frequent pain in a typical work day that would interfere with her attention and concentration, and that Plaintiff was likely to miss two days of work per month. Plaintiff's limitations were thought to have been present since her alleged onset date of disability (January 3, 2008), and were likely permanent. Tr. 359-362.

## HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she had nerve pain all over her body, which stemmed from fibromyalgia. Tr. 11-12. She stated she did very minimal house work (such as laundry), her children did most of the other household work, and her husband helped her grocery shop. Tr. 15-16. She testified that she drove to the grocery store, doctor appointments, and church on Sundays. Tr. 16-17. Plaintiff stated that she read, watched television, and sewed for short periods of time. Tr. 17-18. She could lift a gallon of milk, but reported numbness in her hands that affected her ability to hold and grasp objects. Tr. 14, 21. Plaintiff reported she quit work because of fatigue and frequent tardiness, breaks, and absences. Tr. 22-25.

## DISCUSSION

Plaintiff alleges that the ALJ improperly failed to consider the various factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) in evaluating the opinion of her treating physician. The Commissioner contends that the final decision is supported by substantial evidence[2] and free of

---

[2]Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a

(continued...)

reversible legal error, and that the Commissioner reasonably discounted medical opinions and other evidence that contradicted the record as a whole.

Plaintiff alleges that the ALJ erred in discounting the opinion of her treating physician, Dr. Oliver. She argues that the ALJ picked the words "no acute distress" in Dr. Oliver's notes to discount her opinion and ignored Dr. Oliver's notes that show objective findings and notations of tender points, leg pain, fatigue, headaches, and insomnia. Plaintiff argues that Dr. Oliver's opinion is supported by the findings of Dr. Tollison. She also argues that the ALJ ignores the "very supportive" medical records of Dr. Joudeh. The Commissioner contends that substantial evidence supports the ALJ's findings that Plaintiff retained the residual functional capacity to perform a limited range of light work, reasonably evaluated the medical opinions in the record, and gave good reasons for declining to give Dr. Oliver's July 2009 opinion great weight. Specifically, the Commissioner argues that the medical record from the relevant time contradicted Dr. Oliver's own treatment notes, Dr. Oliver's opinion was inconsistent with the other medical evidence, and the ALJ's decision is supported by the opinions of the non-treating, non-examining State agency physicians. The Commissioner also argues that the ALJ reasonably declined to give weight to Dr. Tollison's opinion that Plaintiff suffered from dysthymic disorder and somatoform disorder because it was inconsistent with the record as a whole, was overly sympathetic, and the mental residual functional capacity found by the ALJ is supported by the findings of the State agency psychologists.

[2](...continued)
refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

It is unclear whether the ALJ's decision to discount treating physician Dr. Oliver's opinion is supported by substantial evidence. In her decision, the ALJ discounted Dr. Oliver's opinion because she found that Dr. Oliver was overly sympathetic, there was overt concern regarding Plaintiff's application for disability benefits, Dr. Oliver's opinion was not supported by the physician's own notes, and her findings were inconsistent with other medical evidence. Tr. 49-50.

There is no indication, however, that the ALJ considered the treatment notes and opinions of Dr. Joudeh. Dr. Joudeh examined Plaintiff at least twice and gave opinions concerning Plaintiff's impairments and ability to work on two or three occasions. The Regulations provide that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(d).

Here, the ALJ discounted Plaintiff's treating physician's opinion in part because she found that it was inconsistent with the other medical evidence. The ALJ's decision does not discuss the treatment notes and opinions of Dr. Joudeh, such that the undersigned cannot determine whether this evidence was evaluated by the ALJ. As Dr. Joudeh's notes and opinions appear to provide at least some support for Dr. Oliver's opinion, it is unclear whether the ALJ's decision is supported by substantial evidence.

The ALJ appears to have discounted Dr. Oliver's opinion in large part because her treatment notes in late 2008 and 2009 indicate that Plaintiff was in no acute distress. Although the records do indicate that Plaintiff was in no acute distress, it appears that Plaintiff continued to have chronic problems. On May 22, 2009, Dr. Oliver noted that Plaintiff's fatigue was problematic and that specialty referral might be needed. Tr. 286-287. Low back pain as well as myalgia and myositis were assessed on February 13, 2009. Tr. 289-290. Dr. Oliver noted that Plaintiff had arm pain, as well as sleepiness from Lyrica on December 19, 2008. Depressive disorder and myalgia and myositis were assessed. Tr. 291-293. On November 2008, a physician's assistant in Dr. Oliver's office noted that Plaintiff had increased pain in her shoulder blade region, Ultram was no longer helping Plaintiff, and Plaintiff was experiencing increased stress and anxiety. Examination revealed muscle spasm in Plaintiff's upper back and that Plaintiff appeared anxious and apprehensive. Migraine, low back pain,

myalgia and myositis, depressive disorder, and anxiety were all assessed. Tr. 294-296. Thus, it is recommended that this action be remanded to the Commissioner to consider all evidence of record (including the treatment notes and opinions of Dr. Joudeh) and to determine the weight to be given to Dr. Oliver's opinion in light of all of the evidence.

**CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to consider the opinion of Plaintiff's treating physician (Dr. Oliver) in light of all the evidence including the opinions of Dr. Joudeh.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

March 6, 2012
Columbia, South Carolina